# Schenley's Appeal.

1. S. leased a lot in Pittsburg to M. for ten years, allowing M. to remove at the end of the term such improvements as he might make ; the "buildings, improvements and other property on said premises (to be) subject to distraint in like manner as personal property for said rent * * * in case of removal, whether clandestinely or openly, of said buildings, improvements or other property, * * * said buildings, improvements or the material therefrom may be followed and distrained as if still on the premises." M. erected a building; mechanic's liens were filed under which the leasehold was sold, and the building, &c., removed by the sheriff's vendee. *Held,* that S. was entitled to the rent due from the proceeds of the sale; and that the lien-creditor had no claim on the fund in court.

2. The Act of February 27th 1868, extending the Mechanic's Lien Act of 1836 to improvements, engines, &c., for oil or other refineries, does not apply to leases for the ordinary purposes of residence, &c.

3. Under the Act of 1836 and its supplements, a mechanic's claim does not lie against a leasehold or the building erected on it by a tenant for years.

4. The Act of April 28th 1840, providing that no greater estate shall be sold under a mechanic's lien, than is vested in the person in possession, does not enlarge, but restrains the right of the mechanic's-lien creditor.

5. Act of February 17th 1858, relating to improvements, &c., "on lands of others," in Luzerne and Schuylkill counties, extended by Act of March 21st 1865 to Westmoreland and Allegheny counties, construed and applied.

6. "Improvements" in all *these acts* does not mean ordinary houses; but works on colliery, oil-leases, &c.

7. Dame, Seymour & Co.'s Appeal, 12 P. F. Smith 417, distinguished.

November 4th 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Appeal from the decree of the Court of Common Pleas of *Allegheny county :* No. 25, to October and November Term 1871.

The decree in this case was in the distribution of the proceeds

of the sheriff's sale of the personal property of James H. Moore. The amount of money paid into court was $131.04.

The distribution was referred to W. G. Hawkins, Esq., as auditor. He reported that on the 30th of December E. W. H. Schenley and Mary E. Schenley his wife leased to Moore, the defendant in the execution, a lot in the Twelfth Ward, Pittsburg.

The lease contained the following provisions :—

* * * "And further, that the premises shall not be used for any purpose causing nuisance; and in case of violating these covenants or any of them, or transferring this lease without the written sanction of said lessors, said lessee and his assigns shall forfeit said lease and improvements, and lessors may, either with or without any writ or legal process, at their option, re-enter and hold said premises and the improvements, buildings, &c., from which time all claim by defaulting lessee shall wholly cease. Improvements, by said lessee erected, may be removed from said premises at the termination of this lease: Provided, said covenants have been kept, arrearages, taxes, assessments, &c., for full term of lease as aforesaid, have been fully paid.　But it is herein expressly understood and agreed that said buildings, improvements and other property on said premises are subject and held liable to distraint and sale under warrant, in like manner as personal property, for said rent, taxes, assessments and charges; and at any time, in case of failure to pay the same, taxes, assessments, charges, rent, &c., aforesaid, and at such time due, may be included in, as part of and do really make, the amount of rent due, and may, at the option of the lessors, be included in and distrained for on the premises; or in case of removal (whether clandestinely or openly) of said buildings, improvements or other property, without first satisfying all and every of arrearages as aforesaid (including such charges, taxes and assessments as by the lessors may have been paid), said buildings, improvements or the material thereof may be followed and distrained as if still on the premises; and if removed at any time before the termination of the time for payment of an instalment of rent, then that instalment to be considered as due, and may be distrained for in like manner as if that time had fully expired; and further, it is herein expressly stipulated that no receipt or distraint for simple ground-rent is to be considered or claimed as a waiver of right to distrain for or otherwise enforce payment of any balances of taxes or other arrears as aforesaid; also, that other remedies are not waived by lessors.

"Now, in consideration of the premises, * * * the lessee agrees that if he should fail to pay the aforesaid rent, taxes, assessments, &c., at the days and times hereinbefore stipulated and appointed for the payment thereof, or of any of said charges as aforesaid, that then, and in that case, the said party of the first part may

enter, levy and distrain for the rent, taxes, charges, &c., so in arrears, or pursue said improvements and other goods, &c., or if removed, distrain them wherever found, which, with all the incidents of said distrainment and sale, shall be governed by the laws of the state of Pennsylvania which were in force before the passage of the Act of Assembly of the Commonwealth of Pennsylvania, entitled 'An act to exempt property to the value of $300,' " &c.

The lessee erected a building on the lot, mechanics' liens were filed, and judgment was recovered on one in favor of the Gard Brick Machine Company, on which execution was issued, and the leasehold premises levied on and sold, and the building removed by the sheriff's vendee. The rent in arrear due at the time of the levy to the lessors was $101.10, which they claimed out of the proceeds of the sheriff's sale.

The auditor decided that under the Act of February 27th 1868, Pamph. L. 212, 2 Brightly's Purd. Dig. 1029, pl. 24, &c., the mechanics and material-men had a lien, subject to the conditions of the lease, and that the rights of the lessors under it were unaffected by the sheriff's sale. He therefore distributed the fund to the lien-creditors.

The lessors filed exceptions to the report, which were dismissed and the report confirmed. The lessors appealed to the Supreme Court, and assigned the decree of confirmation for error.

*J. C. Dickens* (with whom was *N. B. Hatch*), for appellants.

*Lazear & Hopkins*, for appellees.

The opinion of the court was delivered, January 9th 1872, by

AGNEW, J.—The opinion of the auditor in this case appears to be founded on the effect of the Act of 27th February 1868, Pamph. L. 212, which extends the Mechanics' Lien Law of 16th June 1836, and its supplements " to all improvements, engines, pumps, tanks, machinery and fixtures in or about, or in any way connected with, or appertenant to, oil or other refineries; and to all tanks for the storage of petroleum, coal or carbon oil, or the products thereof; whether said tanks be connected with a refinery or otherwise; and on all pumps, machinery and fixtures connected therewith, and to all mechanics, machinists, material-men and contractors doing work, or furnishing materials or articles therefor." The second section of this act makes it applicable to tenants of leased premises as well as to the owners of the freehold, and confines the provisions of the act to certain counties, including Allegheny. But this act, which extends to improvements, &c., for oil refineries and tanks for stowal of oil, has no possible bearing upon this case, which was that of a lease for the ordinary purpose of residence,

[Schenley's Appeal.]

&c.   The auditor also refers to the opinion in the case of Dame, Seymour & Co.'s Appeal, 12 P. F. Smith 417, from Venango county; involving the interpretation of the Act of 8th April 1868, Pamph. L. 752; which by its terms is confined to the county of Venango. I can find no extension of this act to Allegheny county.   Neither the Act of 27th February nor that of 8th April 1868 seems to have any bearing on the question before us.   The mechanics' claim here is therefore thrown back upon the general Mechanics' Lien Law of 1836 and its supplements.   But under that act it is settled by a long train of decisions that a mechanic's claim does not lie against a leasehold interest or the building erected thereon by a mere tenant for years: Church v. Griffith, 9 Barr 117; White's Appeal, 10 Id. 252; Haworth v. Wallace, 2 Harris 118; Gaule v. Bilyeau, 1 Casey 521; Woodward v. Leiby, 12 Id. 441.   It is equally well settled by the same cases that the Act of 28th April 1840, providing that no greater estate shall be sold under a mechanics' lien than was vested in the person in possession at the time of the erection of the building, does not enlarge the right of the mechanics'-lien creditor, but curtails it.   As a consequence of these principles, the mechanics'-lien creditor here had no claim whatever upon the fund in court; for he had no lien under any act which has been brought to our notice, or which has been discovered by our own examination.   It is the misfortune of this case that we have but one paper-book before us, to wit, that of the appellant.   This is a fault on the part of the appellee, for it is the duty of parties to assist the court by their own research, especially in such a case as this depending on alleged local legislation.   If we have failed to discover any act applicable to the case, the blame must fall upon the party so negligent of his own interests.

It is unnecessary, therefore, to pursue the case into any extended examination of the provisions of the lease, for it is sufficient to say that it is clear as between Moore, the tenant, and Mr. and Mrs. Schenley, his landlords, the building, sold by the sheriff, was made liable by express covenant, to the right of distress for the rent, taxes, &c., whether on or off the premises.

Since writing the foregoing, I have been informed by the auditor in this case that the reference to the Act of 27th February 1868, in the paper-book, is an error, and that the act intended to be referred to is that of March 21st 1865, Pamph. L. 433 (Purd. 1401), extending the Act of February 17th 1858 to the counties of Westmoreland and Allegheny.   The latter act will be found in Purdon by Brightly, p. 710, pl. 17 (2 Bright. Purd. 1029, pl. 23), and *extends* the General Mechanics' Lien Law of 1836 "to all *improvements*, engines, pumps, machinery, screens and fixtures, erected or put by tenants of leased estates on lands of others in the counties of Luzerne and Schuylkill; and to all mechanics,

machinists and material-men, doing work or furnishing the articles or materials therefor, " provided that the lien hereby created shall extend only to the interest of the tenant or tenants, lessee or lessees therein, and to the *improvements*, engines, pumps, machinery, screens and fixtures erected, repaired or put in by mechanics, machinists, persons or material-men entering liens thereon." Though the word "improvement" is large enough, under ordinary circumstances, to include a house or private dwelling, it is manifest, by its connection in this act with the words engines, pumps, machinery, screens and fixtures, and by the two counties to which it was originally made applicable, that this word was not intended to authorize the creation of liens upon ordinary houses or dwellings of tenants independently of the works indicated by the other expressions used in connection with the word improvements. These words have clear reference to the works erected on colliery leases, which are quite numerous, and are of great value and importance in the counties of Luzerne and Schuylkill. The counties of Westmoreland and Allegheny are also coal territories, and hence the propriety of extending the law to the leased collieries there. Had the legislature meant to extend the General Mechanics' Lien Law of 1836 to houses or buildings of any sort, put up by tenants or lessees generally, it would have done so without the specification of improvements, engines, pumps, machinery, &c., for then the term " buildings," the only one used in the Act of 1836, would have carried its operation at once to the kind of building put up by Moore, the tenant in this case. The Act of 17th February 1858 does not therefore include this building.

The decree of the court below is reversed; and it is now ordered and decreed that the rent and taxes of the landlords in this case be paid to them out of the fund in court, and that the remainder of the fund not applicable to the costs and expenses of auditing be paid according to the report of the auditor, and the record is ordered to be remitted for this purpose.